IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELSTON H. RANDOLPH, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>) Civil Action No. 06-204<br>)<br>)<br>JO ANNE B. BARNHART, Commissioner of )<br>Social Security, )<br>)<br>)<br>Defendant. ) | |

AMBROSE, Chief District Judge.

## **OPINION and ORDER OF COURT**

### **SYNOPSIS**

The Commissioner of Social Security and the Claimant have filed cross motions for summary judgment on the issue of whether the Administrative Law Judge's ("ALJ") decision denying benefits is supported by substantial evidence of record. Because I find that it is so supported, the ALJ's decision is affirmed.

### **OPINION**

The Claimant, Elston H. Randolph ("Randolph"), seeks an award of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. He previously filed for benefits in February of 2000. (R. 15, 44). An ALJ denied that

application in a decision dated November 20, 2001. (R. 44-50). Randolph failed to timely appeal that decision and it became final. He filed the current application for DIB on December 9, 2002. (R. 71-73). Randolph's DIB insured status expired on March 31, 2002. (R. 881). Accordingly, the relevant period for adjudication here is from November 21, 2001 (the first date following the final decision) and March 31, 2002 (the date on which Randolph last met the insured status requirements under the Act).

Randolph contends that he is disabled due to degenerative disc disease, depression, diabetes, tuberculosis and hypertension. (R. 71-73, 86 and 884). At Randolph's request, an ALJ conducted a hearing. Randolph was represented by an attorney. Ultimately the ALJ denied benefits (R. 12-23) and the Appeals Council denied the request for review. (R. 7-11) Randolph appealed to this Court. Randolph assigns seven points of error to the ALJ's decision. More specifically, Randolph contends that because he suffers from both exertional and nonexertional impairments, the use of the Medical Vocational Guidelines is prohibited. Instead, he reasons, the ALJ should have consulted with a vocational expert ("VE") to determine which jobs were available and consistent with his impairments. Randolph also insists that the ALJ erred in assessing his residual functional capacity. Additionally, Randolph urges that the ALJ failed to give proper deference to the Veterans Administration's ("VA") finding of disability. Finally, Randolph contends that the ALJ improperly disregarded the medical opinion of his treating physician and erred in finding that his depression did not meet Listing 12.04.

For the reasons set forth below, I reject Randolph's arguments. The ALJ's decision is supported by substantial evidence of record. Accordingly, the decision is affirmed.

## **STANDARD OF REVIEW**

The scope of review by this Court of an appeal from the Commissioner's decision is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); Schaudeck v. Comm'r. of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, but equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. A single piece of evidence will not satisfy the substantiality test if the ALJ ignores or fails to resolve a conflict created by countervailing evidence. Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision and does not re-weigh the evidence presented to the Commissioner. Monsour Medical Center v. Heckler, 806 F.2d 1190, 1195 (3d Cir. 1986), citing, 42 U.S.C. § 405. If the decision is supported by substantial evidence, I must affirm it, even if I would have decided the case differently. Bailey v. Apfel, CA 97-8908, 1998 U.S. Dist. LEXIS 10595 at * 2 (E.D. Pa. July 9, 1998) (citations omitted).

**ANALYSIS**

In determining whether a claimant is eligible for disability insurance benefits or supplemental security income, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of impairments) which is so severe that he is unable to pursue substantial gainful employment currently existing in the national economy. 42 U.S.C. §§ 423(d)(1)(A) and (d)(2)(A). In addition, the impairment must be expected to result in death or to have lasted or be expected to last for not less than twelve months. 42 U.S.C. § 423(d)(1)(A); Morales v. Apfel, 225 F.3d 310, 315-16 (3d Cir. 2000).

To determine the claimant's rights to either disability insurance benefits or supplemental security income benefits, the ALJ conducts the same five-step evaluation. If the claimant is working or doing substantial gainful activity, a finding of not disabled is directed and the analysis is completed. 20 C.F.R. § 404.1520(b), 416.920(b). In step two, the ALJ determines if the claimant suffers from "a severe impairment that significantly limits his or her ability to do basic work activity." Id., §§ 404.1520, 416.920. If so, and if that impairment meets or equals criteria for a listed impairment or impairments in Appendix of Subpart P of Part 404 of 20 C.F.R. and has lasted or is expected to last continually for at least twelve months, a finding of disability is directed at step three. Id., §§ 404.1520(d), 416.920(d). The ALJ then considers whether the claimant retains the residual functional capacity to perform past relevant work. Id., §§ 404.1520(e), 416.920(e). If not, the ALJ, taking into account the claimant's residual functional capacity, age, education, and past work

experience, determines whether the claimant can perform other work that exists in the national economy. If the claimant can perform such other work, he is not disabled. Id., §§404.1520(f), 416.920(f). In all but the final step, the burden of proof is on the claimant. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); 42 U.S.C. §§ 416(1), 423(d)(1)(A).

Here, the ALJ first determined that Randolph was not engaged in substantial gainful activity. Second, she then characterized Randolph's degenerative disc disease of the lumbar spine with chronic back pain as a "severe" impairment at the second step of the analysis. (R. 16). The ALJ found that the remainder of Randolph's impairments were not severe because they did not cause any more than minimal functional limitations. (R. 16) The ALJ also determined, at step three, that Randolph did not have an impairment which met any of the criteria described in Appendix I of the regulations. (R. 18). At the fourth step of the analysis, the ALJ found that Randolph's past relevant work (auto worker, dishwasher, customer service representative) could be classified in the light to medium exertional categories and that he could not perform such work. (R. 21). Finally, at the fifth step of the analysis, the ALJ found Randolph, who was between 45 and 46 during the relevant time period, who was a "younger individual" within the meaning of the Regulations, who had a high school education and who had an unskilled to semi-skilled work background, able to perform the full range of sedentary work. (R. 21). As stated above, Randolph raises seven challenges to the ALJ's findings in these regards. I will address them seriatim.

I. <u>**USE OF THE GUIDELINES**</u>

The ALJ found Randolph suffered from degenerative disc disease. (R. 22) Randolph insists that the record establishes that he also suffered from nonexertional impairments - depression and pain. As such, he reasons, the ALJ was prohibited from using the Medical Vocational Guidelines. Randolph's argument is unpersuasive.

With respect to depression, the ALJ determined at the second step of the analysis, that Randolph does not suffer from a severe mental impairment. (R. 17-18). Substantial evidence of record supports this conclusion. Medical records indicate that Randolph's depression resolved following completion of his substance abuse rehabilitation program on November 26, 2001. (R. 259). Upon examination, he was declared to be competent and responsible. (R. 116). His GAF on November 26, 2001 was assessed at 75. (R. 116). A rating of 75 indicates "no more than a slight impairment. DSM-IV-TR, at 34. Similarly, Dr. Julius Ehik examined Randolph on January 17, 2002. Dr. Ehik does not make any reference to Randolph suffering from a depression. Indeed, Dr. Ehik explained that Randolph's mental status evaluation revealed that he was "well oriented as to time, place and person." (R. 185). Randolph was adjudged to be coherent and functioning within the average range of intellect. (R. 185). Further, Randolph suffered no episodes of decompensation between November 21, 2001 through March 31, 2002. (R. 17).

Moreover, the record demonstrates that during the period of coverage, Randolph was able to participate in a VA work program. Randolph worked in a print

6

shop between January 27, 2002 and February 9, 2002 and demonstrated an average ability in working with others, an average ability in accepting supervision, an average amount of self-confidence, an average amount of motivation and initiative, an average degree of judgment, an average level of work responsibility, a well above average level of attendance and punctuality and an average ability to follow and retain oral and written instructions. (R. 173). There is no indication that depression interfered with his ability to perform his job.

Consequently, the record contains substantial evidence supporting the ALJ's conclusion that Randolph did not suffer a severe impairment in the form of depression. As such, the ALJ was not required to include this nonexertional impairment in her assessment of whether Randolph could perform the full range of sedentary job duties.

With respect to "chronic pain," the ALJ did note that Randolph had been diagnosed with "degenerative disc disease of the lumbar spine with chronic back pain." (R. 16). Yet I reject Randolph's contention that this finding barred the ALJ's reliance on the Medical Vocational Guidelines. While pain can be nonexertional in nature, there is support in the record for the conclusion that Randolph's pain is exertional in nature.[1] For instance, during the hearing, Randolph asked to alternate between sitting and standing because each position aggravated back pain. (R. 884-922). Further, he complained that he struggled with a former job as a customer

---

[1] Exertional impairments relate to a claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. 404.1569(b).

service representative because that job required him to sit all day, which aggravated back, leg and hip pain. (R. 888-89). Randolph also explained that he has pain when he bends forward, when he stands, and when he sits for long periods of time. (R. 900). Thus, because Randolph's pain was related to his back condition, and is exertional in nature, the ALJ did not err in relying on the Medical Vocational Guidelines. See Nicewicz v. Apfel, 38 Fed. Appx. 809 (3d Cir. 2002) (affirming an ALJ's use of the grids where a claimant suffered pain related to a back injury because that pain was exertional in nature).

## II. LACK OF VOCATIONAL EXPERT TESTIMONY

Randolph agrees that the ALJ correctly determined at the fourth step of the analysis that he is unable to perform his past relevant work. Yet Randolph disagrees with the ALJ's subsequent conclusion that he was capable of performing a full range of sedentary work. Randolph insists that the ALJ should have consulted a VE in order to identify specific jobs which Randolph could have performed consistent with his impairments. He cites to the Third Circuit court's decision in Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000) for the proposition that, where a claimant has both exertional and nonexertional impairments, the Commissioner must meet his burden of proof in identifying specific jobs for the claimant through additional evidence such as the testimony of a vocational expert. I find Randolph's argument unpersuasive as it is premised upon a claimant having nonexertional impairments. As set forth above, the ALJ's conclusion that Randolph does not suffer from severe nonexertional impairments is supported by substantial evidence of record.

### III. <u>RESIDUAL FUNCTIONAL CAPACITY</u>

The ALJ ultimately determined that Randolph retained the residual functional capacity to perform a full range of sedentary work, or work which requires lifting and carrying of no more than 10 pounds occasionally, while performing no prolonged standing or walking. (R. 22) Randolph insists that there is substantial evidence of record that he is neither physically nor mentally able to do the full range of sedentary work. He explains, for instance, that the VA awarded him a disability pension; that x-rays indicate a worsening of his condition; that he consistently complained of pain during the relevant period of time; and that psychiatric records from July of 2003 reveal that he suffered from depression and an anxiety related disorder.

Randolph's argument is not persuasive. There is substantial evidence supporting the ALJ's findings regarding Randolph's residual functional capacity. For instance, as stated elsewhere in this Opinion, the VA's assessment of Randolph's disability was not binding on the ALJ. Further, medical evidence supports the ALJ's conclusion that there was no change in Randolph's back condition between January of 1997 and January of 2002. (R. 186). Additionally, for reasons stated elsewhere in this Opinion, Randolph's complaints of pain are somewhat suspect and the ALJ was not compelled to consider records from a psychiatrist who first treated Randolph more than a year after the period at issue. Consequently, contrary to Randolph's arguments, the ALJ properly found that Randolph's impairments did not preclude the minimal demands of sedentary work.

## IV. THE VETERANS ADMINISTRATION

The VA has awarded Randolph a disability pension. The ALJ observed that, in May of 2000, the VA assessed Randolph as being 60% disabled due to his back condition. (R. 19). The ALJ estimated that this determination would likely cover the period at issue here - November 21, 2001 through March 31, 2002. The ALJ further concluded that the finding regarding disability made by the VA was not binding upon the Commissioner because the standards used by the VA are different than those used by the Social Security Administration in determining whether or not a claimant is disabled. (R. 19).

Randolph offers two challenges to the ALJ's findings in this regard. First, he states that he is completely disabled, not merely 60% disabled. Indeed, Randolph has identified a letter in the record dated September 6, 2000, in which the VA explains that Randolph is rated as 100% disabled. (R. 83). Second, Randolph argues that the VA's findings should have been given substantial weight.

Even accepting that Randolph is 100% disabled according to the VA, I reject his contention that the ALJ erred in not finding this conclusion dispositive. The Third Circuit court has stated that "the determinations of other government or non-governmental agencies are not binding on social security benefits decisions." Gifford v. Barnhart, 129 Fed. Appx. 704 (3d Cir. 2005). Certainly, an ALJ must nevertheless "thoroughly consider the medical evidence relied upon by such an agency." See Malcom v. Barnhart, 448 F. Supp.2d 595, 603 (D. Del. 2006), citing, Gifford, 129 Fed. Appx. 704.

Here, however, it is clear that the ALJ did thoroughly consider the medical evidence. For instance, the ALJ noted that Randolph participated in the work program at the VA despite his back pain and that his work tolerance was rated as "good." (R. 19). The ALJ also observed that Randolph's claims of debilitating pain are called into question by the fact that he took only Naproxen and Ibuprofen for pain and declined a recommended surgery. (R. 19). Additionally, the evidence revealed that Randolph had normal sensation, that he retained a full range of motion in the extremities, and that he was grossly intact neurologically. (R. 235). Indeed, Randolph's physical examination during the relevant period of time was "within normal limits." (R. 116). Consequently, the ALJ's rejection of the VA's finding of disability is supported by substantial evidence of record.

## V. **COMPLAINTS OF PAIN**

Randolph devotes a few sentences to arguing that the ALJ erred in her evaluation of his complaints of pain. Specifically, Randolph faults the ALJ for disregarding the proof of his pain as evidenced by the VA's award of a service connected disability pension. For reasons set forth elsewhere in this Opinion, I find this argument to be unconvincing. Randolph also points to the fact that he participated in physical therapy, received cortisone shots in his back and has been using a cane since 2000 as further proof of his debilitating pain. Yet, as mentioned elsewhere in this Opinion, and as observed by the ALJ, Randolph participated fully in the VA work program during the relevant period of time with good results. Further, during this same period of time, Randolph took only Naproxen and

Ibuprofen for pain. In short, the record contains substantial evidence which supports the ALJ's conclusion that Randolph's complaints of pain were suspect.

## VI. RANDOLPH'S TREATING PHYSICIAN

Randolph's treating psychiatrist, Dr. Warren T. Goodrich, completed two questionnaires detailing Randolph's mental health condition. (R. 695-705). Dr. Goodrich opined that Randolph is unable to sustain full-time employment. (R. 696). Randolph faults the ALJ for disregarding Dr. Goodrich's opinion. As his treating physician, Randolph insists, Dr. Goodrich's findings should have been given controlling weight.

I reject Randolph's position. The period of disability here is between November 21, 2001 and March 31, 2002. Dr. Goodrich did not begin treating Randolph until May 12, 2003 - well more than one year beyond the period at issue. Further, Dr. Goodrich offers no comment as to Randolph's mental condition during the period of time at issue. Consequently, Dr. Goodrich's position as to Randolph's mental condition was not relevant to the matters before the ALJ. As such, she was not required to consider such evidence.

## VII. THE LISTED IMPAIRMENTS

At the third step of the sequential analysis, the ALJ considered whether Randolph had an impairment which met or equaled the requirements for a listed impairment. Specifically, the ALJ found that Randolph's diagnoses of polysubstance abuse and depression met the relevant "A" criteria for Listings 12.09 and 12.04, but found that he did not meet the "B" criteria during the relevant period for Listing

12.04. (R. 17). To satisfy the "B" criteria, Randolph must have two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; or (4) repeated episodes of decompensation, each of an extended duration.

Randolph insists that the ALJ should have found that he met the "B" criteria. In support of this assertion, Randolph points to the November 20, 2001 ALJ decision in which Randolph insists the ALJ found he had "moderate" deficiencies of concentration, persistence and pace. See Docket No. 8, p. 20. (R. 46). As that ALJ held, such findings do not satisfy the "B" criteria. Randolph similarly points to the report of the state's non-examining psychologist, who also observed that Randolph had "moderate" limitations as to concentration, persistence and pace. Again, however, the "B" criteria require a finding of "marked" limitation - "moderate" is insufficient.

Randolph also argues that the report of his treating psychiatrist Dr. Warren Goodrich conclusively establishes that he satisfies the "B" criteria. As stated elsewhere in this Opinion, however, Dr. Goodrich's report is not relevant to whether Randolph was disabled within the meaning of the Social Security Act during the period of time at issue. Dr. Goodrich examined him more than a year after Randolph's insured status expired.

Consequently, there is substantial evidence of record which supports the ALJ's conclusion that Randolph's depression did not meet the requirements of Listing 12.04 for an Affective Disorder.

THEREFORE, this **11th** day of December, 2006, for the reasons set forth in the accompanying Opinion, it is Ordered that the Commissioner's Motion for Summary Judgment (Docket No. 9) is granted, the Claimant's Motion for Summary Judgment (Docket No. 7) is denied and the ALJ's decision is affirmed. Judgment is granted in favor of the Defendant and against the Plaintiff. This case is CLOSED.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge